# United States Court of Federal Claims

No. 12-45 L
October 4, 2013

---

**THE HOPI TRIBE, a federally
recognized Indian Tribe,**

                     ***Plaintiff,***

**v.**

**UNITED STATES OF AMERICA,**

                     ***Defendant.***

Motion to dismiss; Subject-matter
jurisdiction; Sovereign immunity;
Indian trust

---

*Michael D. Goodstein*, Hunsucker Goodstein PC, Washington, DC, for plaintiff.

*Maureen E. Rudolph*, Environment & Natural Resources Division, United States Department of Justice, Washington, DC, for defendant.

## OPINION AND ORDER

*Block, Judge.*

       Plaintiff, an Indian tribe, brought this suit to recover damages for breach of trust. The alleged breach consists of defendant's supposed failure to ensure that the water supply on plaintiff's reservation contains safe levels of arsenic. Before the court is defendant's motion to dismiss for lack of subject-matter jurisdiction, in which defendant asserts that plaintiff has failed to identify an applicable fiduciary duty. The central legal question in this case, therefore, concerns the precise scope of the federal government's duties as trustee with respect to Indian trusts. See generally *United States v. Mitchell (Mitchell I)*, 445 U.S. 535 (1980). The answer to this inquiry has a long and sometimes acerbic pedigree. But there are some constants.

       To be sure, the very notion of a tribal trust relationship is intertwined with the sovereignty of the United States: "Throughout the history of the Indian trust relationship, we have recognized that the organization and management of the trust is a sovereign function subject to the plenary authority of Congress." *United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313, 2323 (2011) (citing *Merrion v. Jicarilla Apache Tribe*, 455 U.S. 130, 169, n.18 (1982); *United States v. Wheeler*, 435 U.S. 313, 319 (1978); *Winton v. Amos*, 255 U.S. 373, 391 (1921); *Lone Wolf v. Hitchcock*, 187 U.S. 553, 565-66 (1903); *Cherokee Nation v. Hitchcock*, 187 U.S. 294, 308 (1902); *United States v. Cadelaria*, 271 U.S. 432, 439 (1926); and *Tiger v. Western Investment Co.*, 221 U.S. 286, 315 (1911)). As will become clear, in this case, plaintiff has failed to show that Congress has defined the federal government's trust duties in such a way as to authorize plaintiff's suit for damages in this court. Accordingly, the court must grant defendant's motion to dismiss.

# I. BACKGROUND

## A.  Plaintiff's Complaint

Plaintiff is a federally recognized Indian Tribe, Compl. ¶ 9, residing on the Hopi Reservation (the "Reservation") in Arizona, *id.* ¶¶ 11, 13.  Although the land is uninhabitable without drinking water, id. ¶ 14, the public water systems serving villages on the eastern portion of the Reservation contain levels of arsenic higher than what Environmental Protection Agency (EPA) regulations, *see* 40 C.F.R. § 141.62, permit, Compl. ¶ 18.  According to plaintiff, excessive consumption of arsenic can cause serious medical harm, including harm to the nervous system, heart and blood vessels, skin, and other organs.  *Id.* ¶ 19.

Plaintiff brought this suit claiming that defendant, through the Bureau of Indian Affairs (BIA), has committed a breach of trust by failing to provide plaintiff with an adequate supply of drinking water.  *Id.* ¶¶ 4, 22, 33.  Plaintiff claims that defendant's trust duties flow from an executive order creating the Reservation (the "Executive Order of 1882") and a subsequent Act of Congress incorporating the requirements of that executive order by reference (the "Act of 1958"), *see* 72 Stat. 493.  Compl. ¶ 6, 28.  According to plaintiff, by establishing the Reservation and holding the land in trust, the Executive Order of 1882 and the Act of 1958 created a duty on the part of defendant to protect the trust property, including the Reservation's water supply.  *Id.* ¶¶ 26-32.  Plaintiff asserts that defendant breached this duty by failing to ensure that the arsenic level in the water supply complied with EPA standards.  *Id.* ¶¶ 18, 22, 33.

## B.  Defendant's Motion To Dismiss

Defendant filed a motion to dismiss the complaint for lack of subject-matter jurisdiction. *See* Def.'s Motion To Dismiss, ECF Dkt. 10, at 1.  Defendant contends that plaintiff has failed to identify a source of law creating a legally enforceable duty requiring defendant to provide a certain quality of drinking water to the Reservation.  *Id.* at 4.  According to defendant, neither the Executive Order of 1882 nor the Act of 1958 imposes such a duty.  *See id.* at 6-7.  Defendant concedes that it holds plaintiff's water rights in trust but argues that this general trust relationship does not suffice to establish a specific trust duty to maintain water quality.  *Id.* at 7 (citing *Mitchell I*, 445 U.S. 535; *Navajo I*, 537 U.S. 488; *Navajo II*, 556 U.S. 287).

Moreover, defendant argues, the sources of law plaintiff identifies in its complaint cannot "fairly be interpreted" as mandating compensation.  *Id.* at 11.  According to defendant, the Act of 1958 simply "provides a mechanism for judicial resolution of what land comprises the Hopi Reservation"; it does not support "a fair inference to money damages."  *Id.* at 12.  Likewise, defendant argues that 40 C.F.R. § 141.62—the Safe Drinking Water Act (SDWA) regulation cited in plaintiff's complaint—simply "contain[s] the maximum contaminant level for arsenic in drinking water"; it does not "expressly or impliedly contain language mandating money damages."  Def.'s Motion To Dismiss at 12.  Finally, defendant avers that that Congress has, pursuant to 42 U.S.C. § 1449(a)(1), provided a civil remedy for violations of the Safe Drinking Water Act and that the court ought not interpret a statute or regulation to be money-mandating where, as here, "Congress has provided an alternative remedy for the alleged wrongful conduct." Def.'s Motion To Dismiss at 12 (citing *United States v. Bormes*, 133 S. Ct. 12, 18-20 (2012)).

## C. Plaintiff's Response

In response, plaintiff argues that "[t]he role that [the] United States plays with respect to Hopi water resources is far greater than a general trust relationship." Pl.'s Response to Motion To Dismiss, ECF Dkt. 13, at 1. Specifically, plaintiff argues that "the United States has exercised sufficient involvement in and control over the provision of water to the Hopi Reservation to create an enforceable duty, the breach of which warrants an award of damages." *Id.* at 2. To support this argument, plaintiff relies on an array of diverse statutory provisions dealing with federal responsibility over water supply. *Id.* at 15-16.

For instance, plaintiff cites 25 U.S.C. § 162a(d)(8), which provides that, in exercising his or her trust responsibilities with respect to tribal funds, the Secretary of the Interior shall "[a]ppropriately manag[e] the natural resources located within the boundaries of Indian reservations and trust lands." Additionally, plaintiff notes that, pursuant to 25 U.S.C. § 1632(a), Congress has declared it "the policy of the United States, that all Indian communities and Indian homes . . . be provided with safe and adequate water supply systems and sanitary sewage waste disposal systems as soon as possible." Plaintiff also finds it pertinent to mention that the Bureau of Indian Affairs has express authority over the "extension, improvement, operation, and maintenance of . . . development of water supplies, 25 U.S.C. § 13, and that the Indian Health Service is authorized "to construct, improve, extend, or otherwise provide and maintain . . . domestic and community water supplies and facilities . . . for Indian homes, communities and lands," 42 U.S.C. § 2004a(a)(1). Moreover, points out plaintiff, the Secretary of the Interior is authorized and directed to "undertake . . . a program of basic improvements for the conservation and development of the resources of the . . . Hopi Indians," 25 U.S.C. § 631, and Congress has appropriated $2.5 million for such a program with respect to "[a]gency, institutional, and domestic water supply," *id.* § 631(9)—a program for which the Secretary need follow recommendations of the Hopi Indians only if the Secretary deems those recommendations "feasible and consistent" with the program's objectives, *id.* § 638. Plaintiff also insists that defendant's role in building and maintaining water facilities on the Reservation has been extensive, Pl.'s Response to Motion To Dismiss at 16-19, submits declarations seeking to establish that fact, *see id.* attachments, and requests discovery to find further facts supporting this "control"-based theory of jurisdiction, *see id.* at 34-35.

Of course, because plaintiff did not allege a violation of § 162a(d)(8) or any of these other statutes in its complaint, it does not argue in its response brief that these provisions are money-mandating.[1] Rather, as the court understands it, plaintiff's argument is that these

---

[1] Defendant suggests that the court should ignore plaintiff's reference to these various statutes because they were not mentioned or alluded to in plaintiff's complaint. *See* Def.'s Reply in Support of Motion To Dismiss, ECF Dkt 15, at 3-4, 6. As the court understands it, however, plaintiff in its response brief is not alleging violation of any of these statutory provisions, but is invoking these statutes only to demonstrate a degree of federal "control" over water resources that is sufficient to show that the federal government must exercise the common law trust duties referenced in plaintiff's complaint. However, if—contrary to the court's view—plaintiff does indeed intend to raise new claims by citing these statutes, those new claims constitute an improper attempt constructively to amend the complaint. The court would therefore not consider them. *See Insurance Co. of the West v. United States*, 100 Fed. Cl. 58, 63 (2011) (citing *Bisseur v. Indiana Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009)).

provisions show that "the actions of the United States have permeated the decisions about where and how to provide access to water on the Hopi Reservation," Pl.'s Response to Motion To Dismiss at 16, and that this "pervasive involvement in securing access to drinking water," *id.* at 17, "creates an enforceable obligation" on the part of defendant, *id.* at 19, to fulfill common law duty of a trustee to preserve the quality of the water, *id.* at 19-25 (citing *United States v. Mitchell (Mitchell II)*, 463 U.S. 206 (1983); *United States v. White Mountain Apache Tribe*, 537 U.S. 465 (2003); *Fort Mojave Indian Tribe v. United States*, 23 Cl. Ct. 417 (1991)). That duty, according to plaintiff, is money-mandating because, "[u]pon establishing the fiduciary obligations, 'it naturally flows that the Government should be liable in damages for breach of its fiduciary duties.'" Pl.'s Response to Motion To Dismiss at 27 (quoting *White Mountain*, 537 U.S. at 476).

## D.  Defendant's Reply

In its reply, defendant argues that plaintiff's theory of the case runs afoul of *United States v. Jicarilla Apache Nation*, 131 S. Ct. 2313 (2011), because it asks the court to apply common law trust principles to infer a duty on the part of the federal government. Def.'s Reply in Support of Motion To Dismiss, ECF Dkt 15, at 1-3. Defendant also argues that plaintiff's argument, though different from the theory of the case plaintiff set forth in its complaint, still fails to identify an applicable trust duty requiring the federal government to deliver adequate drinking water to the Hopi Reservation, *id.* at 3-5, or to drill wells or construct water infrastructure on the Reservation, *id.* 6-13. For this reason, defendant argues that discovery to uncover evidence of federal "involvement" in constructing wells would be pointless—there being no money-mandating trust duty, federal involvement is irrelevant. *Id.* at 13.

The facts and arguments having been set forth, the court will now turn to the question before it:  whether plaintiff has met the jurisdictional test for identifying a money-mandating trust duty.

## II. DISCUSSION

"A plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010) (citing *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988)).

The basic test for identifying a money-mandating trust duty was set forth above, but it will be useful here to review some basic principles and explain that test in more detail, beginning with the doctrine of sovereign immunity. Under the doctrine of sovereign immunity, the United States cannot be sued without its consent. *United States v. Navajo Nation (Navajo II)*, 556 U.S. 287, 289 (2009); *Mitchell I*, 445 U.S. at 538. The Indian Tucker Act for tribal claimants unambiguously waives sovereign immunity, *Navajo II*, 556 U.S. at 290, by providing that the Court of Federal Claims shall have jurisdiction "of any claim against the United States . . . whenever such claim is one arising under the Constitution, laws or treaties of the United States, or Executive orders of the President, or is one which otherwise would be cognizable in the Court of Federal Claims if the claimant were not an Indian tribe, band or group." 28 U.S.C. § 1505. The "otherwise would be cognizable" clause refers to the waiver of sovereign immunity found in the ordinary Tucker Act, *see Navajo II*, 556 U.S. at 290, which covers any claim "founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or

upon any express or implied contract with the United States, or for liquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1).

However, these waivers of sovereign immunity do not "create any substantive right enforceable against the United States." *Mitchell I*, 445 U.S. at 538 (quoting *United States v. Testan*, 424 U.S. 392, 398 (1976)). Rather, that substantive enforceable right arises out of the precise nature of the United States' duties as trustee. *Id.*

Crucially, it is the precise trust duty, rather than the United States' status as trustee, that determines the substantive right. In *Mitchell I*, 445 U.S. 535 (1980), the court held that the existence of a "trust relationship" between the federal government and an Indian tribe is not enough to establish any particular trust duty. *Id.* at 549. Examining a statute closely, the court held that, despite the statute's reference to land being held "in trust," the federal government's "fiduciary obligations . . . as trustee are very narrow" and did not encompass all the duties of a private trustee with respect to trust property. *Id.* The Supreme Court has never deviated from this line of reasoning and has consistently defined trust duties by closely examining the statutes that impose them. *See Mitchell II*, 463 U.S. at 224 (holding that statutes and regulations "define the contours of the United States' fiduciary responsibilities"); *United States v. Navajo Nation (Navajo I)*, 537 U.S. 488, 506 (2003) (holding that, in determining the scope of trust responsibilities, "the analysis must train on specific rights-creating or duty-imposing statutory or regulatory prescriptions"); *Navajo II*, 556 U.S. at 293-94, 301 (holding that the scope of trust duties is defined by applicable statutes and regulations); *Jicarilla*, 131 S. Ct. at 2323 (holding that "Congress may style its relations with the Indians a 'trust' without assuming all the fiduciary duties of a private trustee, creating a trust relationship that is 'limited' or 'bare' compare to a trust relationship between private parties at common law").

To be sure, while the federal government's trust duties are ultimately determined by Congress, trust language in a statute may implicitly evoke common law trust principles. *See White Mountain*, 537 U.S. at 474-76; *id.* at 480 (Ginsburg, J., joined by Breyer, J., concurring); *see also Cobel v. Norton*, 240 F.3d 1081, 1101 (D.C. Cir. 2001) (holding that the "interstices" produced by imprecise language of statutes may be "filled" by reference to common law trust principles); *Cohen's Handbook of Federal Indian Law* § 5.05[2], pg. 433 (2005 ed.) ("[T]rust cases arising from actual control of a resource may involve imprecise statutory language. Accordingly, [to] determine the extent of the government's duties, courts often rely on the general law of trusts, once it has been established that an actionable claim for breach of trust exists."). *White Mountain* is a primary example. There, the court confronted a statute that provided for certain land to be "held by the United States in trust for the White Mountain Apache Tribe, subject to the right of the Secretary of the Interior to use any part of the land and improvements for administrative or school purposes for as long as they are needed for the purpose." 537 U.S. at 469 (quoting Pub.L. 86-392, 74 Stat. 8). Focusing on the statute's use of the word trust in conjunction with the Secretary's authority to "use" the land, the Court held that the statute imposed a fiduciary duty on the part of the federal government to preserve the trust property. *Id.* at 474-76.

It is important to recognize that common law trust principles applied in *White Mountain* only because the statute in question used trust language in combination with conferring specific authority on the government. It stood to reason that, in exercising that authority, the government was bound by virtue of the word "trust" to exercise the common law duties of a trustee. As two of the justices in the five-justice majority emphasized in a separate concurrence, the holding of

*White Mountain* was based on the fact that the statute "expressly and without qualification employs a term of art ('trust') commonly understood to entail certain fiduciary obligations, and invests the United States with discretionary authority to make direct use of portions of the trust corpus." *Id.* at 480 (Ginsburg, J, joined by Breyer, J., concurring) (internal quotation marks and citations omitted). Thus, as the Court has since recognized, it is the statutory language itself that is ultimately determinative of the scope of the duties, although "common-law principles" may to some extent "inform [the court's] interpretation of [those] statutes." *Jicarilla*, 131 S. Ct. at 2325 (citing *White Mountain*, 537 U.S. at 475-76); *see also Navajo II*, 556 U.S. at 301.

In view of the foregoing, the Court has fashioned a two-part test for determining the existence of a substantive right enforceable in this court under the Indian Tucker Act, 28 U.S.C. § 1505, and the Tucker Act, 28 U.S.C. § 1491(a)(1). First, "the tribe 'must identify a substantive source of law that establishes specific fiduciary or other duties, and allege that the Government has failed faithfully to perform those duties.'" *Navajo II*, 556 at 290 (quoting *Navajo I*, 537 U.S. at 506). The duty cannot be based on the general trust relationship existing between the United States and Indian tribes or on common law trust principles not tethered to any statute, but must arise out of a specific source of law of the kind cited in the Indian Tucker Act or Tucker Act. *Id.* at 301; *Navajo I*, 537 U.S. at 506; *see also Jicarilla*, 131 S. Ct. at 2323. Second, if such a source of law exists, it must be able to be "fairly interpreted as mandating compensation by the Federal Government for the damages sustained." *Mitchell II*, 463 U.S. at 216-17 (quoting *Testan*, 424 U.S. at 400). "*If* a plaintiff identifies such a prescription, and *if* that prescription bears the hallmarks of a 'conventional fiduciary relationship,' . . . *then* trust principles (including any such principles premised on 'control') could play a role in 'inferring that the trust obligation [is] enforceable by damages.'" *Navajo II*, 556 U.S. at 301 (quoting *White Mountain*, 537 U.S. at 473, 477) (emphases and alteration in original).

In seeking to ascertain whether plaintiff has cleared the first "hurdle," the court must begin where the *Navajo* cases instruct it to begin:  "with 'specific rights-creating or duty-imposing statutory or regulatory prescriptions.'" *Id.* at 301 (quoting *Navajo I*, 537 U.S. at 506). Plaintiff argues that defendant's duty springs from the Executive Order of 1882 and the Act of 1958. Nothing in the text of either the Act of 1958 or the Executive Order of 1882 mentions any duty on the part of defendant to protect the quality of drinking water on the Reservation. The Executive Order of 1882 simply describes the land comprising the Reservation and orders that land to be "set apart for the use and occupancy of the Moqui and other such Indians as the Secretary of the Interior may see fit to settle thereon." The Act of 1958 provides that plaintiff's land is "to be held by the United States in trust for the Hopi Indians" and authorizes the Attorney General (as well as Hopi and Navajo tribes and individuals) "to commence or defend in the [district court] an action against each other any other tribe of Indians claiming any interest in or to the areas described in [the Executive Order of 1882] for the purpose of determining the rights and interests of said parties in and to said lands." 72 Stat. 493. But the Act of 1958 does not confer a duty to protect the water supply or, indeed, to manage water or other resources in any way.

Moreover, as *Mitchell I* made clear, the Act of 1958's use of the word "trust," by itself, is insufficient to support an inference that the statute imposes the common law duties of trustees. There, the Court had before it a statute that, like the Act of 1958, described Indian land as being held in "trust" by the federal government.  That, however, was not enough to permit the inference that the federal government had a comprehensive duty to manage Indian resources.

- 6 -

*Mitchell I*, 445 U.S. at 549.  Nor is it enough here:  a "bare trust," devoid of any particular duty to manage resources, does not require the federal government to exercise the common law duties of trustees.  *See id.*

Plaintiff does not argue otherwise but instead urges that such a duty may be inferred from the trust relationship because of the high degree of federal "control," evidenced by various federal statutes, over plaintiff's drinking water.  To reiterate:  plaintiff does not allege in its complaint a violation of any of these statutes, and the court therefore does not read plaintiff to be asserting a violation of them in its response brief.  Rather, plaintiff's point is that these statutes demonstration such a high degree of federal "control" over and "involvement" with plaintiff's water supply that one can infer, based on the common law trust principles cited in plaintiff's complaint, that the Executive Order of 1882 and the Act of 1958 should be interpreted to impose a duty on defendant to preserve the Hopi Reservation's water supply.

The argument fails.  As the Supreme Court made clear in *Navajo II*, "The Federal Government's liability cannot be premised on control alone."  556 U.S. at 301.  There, the Court rejected the argument that a specific fiduciary duty with respect to coal on the plaintiff's land could be inferred from the fact that a network of statutes and regulations gave the federal government "comprehensive control" over coal.  *Id.*  "Because the Tribe cannot identify a specific, applicable, trust-creating statute or regulation that the Government violated, we do not reach the question whether the trust duty was money mandating.  Thus, neither the Government's 'control' over coal nor common-law trust principles matter."  *Id.*

*Navajo II*'s holding that the federal government's fiduciary duties cannot be based on common law or control was reiterated recently in *Jicarilla*.  That case concerned the common law exception to the attorney-client privilege requiring a trustee to disclose to a beneficiary attorney-client communications related to the exercise of fiduciary duties.  The question was whether that exception applies to the general trust relationship between the United States and Indian tribes.  *See Jicarilla*, 131 S. Ct. at 2318.  The Court held that the exception does not apply because the federal government is unlike a private trustee in at least one important respect:  the "trust" between the federal government and the Indians "is defined and governed by statutes rather than the common law," and therefore Congress "may style its relations with the Indians a 'trust' without assuming all the fiduciary duties of a private trustee."  *Id.* at 2323.  Therefore, a specific trust responsibility could not be based on the bare use of the word "trust," *id.*, or on the federal government's "managerial control," *id.* at 2325 n.5.  Instead, "[t]he Government assumes Indian trust responsibilities only to the extent it *expressly* accepts those responsibilities by statute."  *Id.* at 2325 (emphasis added).

*Navajo II* and *Jicarilla* accord with the whole underlying theory of Indian trust law set forth above.  It is fundamental to that theory that the federal government's duties trustee are subject to the sovereign power of the United States and the "political" control of Congress.  *Lone Wolf*, 187 U.S. at 565-66.  In this respect, as *Jicarilla* explains, an Indian "trust" is not like a private trust.

As noted above, the Court has applied common law principles to Indian trusts where the language calls for it.  *See White Mountain*, 537 U.S. at 475.  But in *White Mountain*, the specific statutory provision at issue simultaneously used the word "trust" in connection with imparting to the federal government a right to "use" the land.  *Id.* at 469.  It was therefore inferred that the federal government, in using the land, was required to exercise the common law duties of a

trustee using trust property. *Id.*; *see also id.* at 480 (Ginsburg, J, with Breyer, J., concurring). Here, the Act of 1958 does not confer on the federal government comparable authority or, indeed, any kind of authority to use or manage the land. The Court has never suggested that a plaintiff can mix and match the trust language from one statute with various duties from entirely unrelated statutes to infer common law duties—and countenancing such a maneuver would severely undermine the principle that common law duties of trustees are applicable to the federal government only to the extent the federal government "expressly accepts" them. *Jicarilla*, 131 S. Ct. at 2325.

Before disposing of this matter, the court will briefly address plaintiff's request for jurisdictional discovery. Jurisdictional discovery is appropriate where jurisdictional facts are in dispute. *Samish Indian Nation v. United States*, 2006 WL 5629542, at *4 (Fed. Cl. July 21, 2006); *E. Trans-Waste of Md., Inc. v. United States*, 27 Fed. Cl. 146, 148, n.1 (1992). The disputed jurisdictional facts, according to plaintiff, concern the degree of federal control over plaintiff's water resources. But for the reasons explained above, those facts are irrelevant. No degree of federal control, even a very high one, can satisfy the first step in the jurisdictional test: identifying a specific trust duty that the federal government is alleged to have violated. *Navajo II*, 556 U.S. at 301. Because plaintiff cannot satisfy this preliminary step, discovery is unwarranted.

In short, this case is simple and straightforward. Neither the Executive Order of 1882 nor the Act of 1958 expressly imposes a duty on defendant to protect the quality of plaintiff's water supply. Nor can such a duty under these sources of law be inferred from the Act of 1958's use of the word "trust" or from the degree of "control" established by various other statutes. *Jicarilla*, 131 S. Ct. at 2323, 2325 n.5; *Navajo II*, 556 U.S. at 301. Because plaintiff has failed to clear the first "hurdle" in establishing this court's jurisdiction, the court need not consider whether any provision plaintiff cites can "fairly be interpreted" as mandating compensation. *See Navajo II*, 556 U.S. at 290, 301.

The court is not unmindful of the sometimes tragic relationship between the federal government and the various Indian tribes. And it may be that plaintiff's argument that the trust relationship between the United States and its various Indian tribes should be construed broadly given that tragic relationship and the at times almost complete economic dependency that exists in this relationship. Nonetheless, this court is bound by the law even if the result is not to the court's liking.

### III. CONCLUSION

For the foregoing reasons, defendant's MOTION to dismiss for lack of subject-matter jurisdiction is GRANTED. The Clerk is directed to take the necessary steps to dismiss this matter.

**IT IS SO ORDERED.**

*s/ Lawrence J. Block*

Lawrence J. Block
Judge